NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**QUINN P. HARRINGTON, OSB #083544**
Assistant United States Attorney
Quinn.Harrington@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:23-cr-00085-MO** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **DANIEL JAMES JUNK,** | |
| **Defendant.** | |

## Introduction

Defendant Daniel Junk will not or cannot stop committing identity theft and stealing from victims. For years, Mr. Junk raided the savings of victims through the online cesspool that is the SIM-Swapping "community" (also referred to as "the Com"). Nothing has stopped him. He did not stop when he was SWATted by one of his fellow thieves online. He did not stop when federal agents executed a search warrant on his apartment that led to a guilty plea. He did not stop when he was kidnapped, beaten, and extorted by another group of fellow thieves. He did not stop when the Court sent him to jail for a week. He will not stop unless he is in prison.

**Government's Sentencing Memorandum** **Page 1**

Mr. Junk and his co-conspirators conducted their crimes online, but their conduct extended well beyond online theft. As one example, Mr. Junk, while using the moniker "[N-Word] Bread," sought to send criminals to the house of a 90-year-old man to steal that victim's phone to then use to steal approximately six million dollars in cryptocurrency. Mr. Junk told "G1 john" that he had an "irl lick," where "irl" means "in real life," or an in-person crime, and "lick" refers to a theft. Mr. Junk made that clear by telling G1 john that he wanted someone to "steal his phone." Mr. Junk suggested that someone could knock on the victim's door and make up a story in order to steal the phone.

← **G1 john** 🌙 (SWAPS ARE NOT UP)

5 January 2022

**Nigga Bread** 16:51
i have a texas irl lick

$6m 16:51

guy is 90 years old 16:52

**G1 john** 🌙 (SWAPS ARE NOT UP) 16:52
gauth

gmail? 16:52

wtw 16:52

**Nigga Bread** 16:52

[image]

its a gmail ijus tried coudlnt get into 16:52

**G1 john** 🌙 (SWAPS ARE NOT UP) 16:52
In reply to this message
how

expain 16:52

do u have 16:52

instant 16:52

**Nigga Bread** 16:52
i just did

**G1 john** 🌙 (SWAPS ARE NOT UP) 16:52
cashout method?

← **G1 john** 🌙 (SWAPS ARE NOT UP)

6 January 2022

**Nigga Bread** 02:04
In reply to this message
how tf would ik nigga

kk 02:05

u can probably just 02:05

steal his phone 02:05

like knock on his door 02:05

and ask 02:05

be like 02:05

i need to text my mom my car broke down the street 02:05

can i use ur phone 02:05

mines dead or something 02:06

**G1 john** 🌙 (SWAPS ARE NOT UP) 21:42
In reply to this message
😭

In reply to this message 21:42
calm down son

because he's in texas 21:42

and that he's rich af 21:42

i'm 95% sure he white 21:42

he finna blow us out 21:42

ngl 21:42

7 January 2022

**G1 john** 🌙 (SWAPS ARE NOT UP) 18:21
NIGGA BREAD

@pretend 18:21

@pretend 18:21

**Government's Sentencing Memorandum**                    **Page 2**

Even Mr. Junk's criminal associate thought the attack was "mean asf" which means "mean as fuck," but Mr. Junk pressed the incident because the victim's "wife died" and "hes [sic] gonna die" and that the money would be "better in our hands."

From later messaging, it did not appear that Mr. Junk and his co-conspirator "G1 john" succeeded in robbing their 90-year-old victim, but only because they had the wrong home address. In addition to this incident, Mr. Junk used this same co-conspirator to swap phone numbers through in-person fraud at cellular telephone stores, even after learning the co-conspirator was only 14 years old.

**Government's Sentencing Memorandum**                                                    **Page 3**

| | | |
|---|---|---|
| G( | **G1 john** 🌙 (SWAPS ARE NOT UP) | 13:53 |
| | sending voice | |
| | msg | 13:53 |
| | 🎤 **Voice message** 01:28 | 13:54 |
| | i'm fucking raged rn | 13:54 |
| NB | **Nigga Bread** | 13:55 |
| | nigga are u 13 | |
| G( | **G1 john** 🌙 (SWAPS ARE NOT UP) | 13:55 |
| | 14                     `03.02.2022 13:50:29` | |
| | the account is still clean for | 13:55 |
| | doe* | 13:55 |
| | we went to another tmo store to check bill | 13:56 |
| | tmmr we finna have a white guy walk | 13:56 |

At sentencing, the Court will need to decide one guideline issue, new USSG § 4C1.1. As explained below, that reduction should not apply because Mr. Junk caused "substantial financial hardship" to at least one of his victims. The Court will also need to decide restitution which is unfortunately not reflective of the total damage caused by Mr. Junk. The government has only been able to trace specific proceeds from some of the victims specifically to Mr. Junk's conduct. Some were already reimbursed (and the reimburser is not requesting restitution). The government will provide a specific restitution figure on the date of sentencing, which is necessary given the fluctuation of value of cryptocurrency as well as the possibility of obtaining more information.

**Government's Sentencing Memorandum**                                    **Page 4**

**Factual Background**

    **A.**    **The Offense Conduct**

        **1.**    **SIM Swapping Schemes**

Mr. Junk is part of a group of young, mostly male, individuals who meet online to steal cryptocurrency. Mr. Junk most often stole through "SIM swapping" schemes.[1] People in these schemes often perform a variety of roles. In general terms, the "targeter" is often the instigator. This person finds a victim, either through breached databases or other exploits, and seeks to steal from that victim. The targeter then often works with an "insider" or "exploiter" who has some means to illegally port a victim's phone number to a phone under the control of the conspiracy. Finally, the "holder" is the person who physically possesses the phone that is used for the "swap" of the victim's phone number and is used to abuse two-factor authentication. Through his criminal career, Mr. Junk performed some part of all of these roles.

Mr. Junk and his co-conspirators talk on various platforms, but Telegram seems to be the hub of the criminal activity. On Telegram, Mr. Junk, using the name "[N-Word] Bread," described himself as a "professional lick hitter." As noted above, "lick" is slang for theft. At age 20, he bragged that he had been stealing "for years" since he "was a little kid."

/ / /

/ / /

---

[1] A "SIM card" is a subscriber identity module or subscriber identification module. A cellphone requires a SIM card to connect the cellphone to a mobile phone network. The SIM card in a particular cellphone is generally linked to the phone number for that cellphone. In general terms, a SIM swap scheme occurs when a scheme participant causes a phone carrier to switch a victim's phone number over to a SIM card that the scheme participant or a co-conspirator controls. By doing so, the scheme participant is able to receive messages intended for the victim, which the scheme participant may then use to, among other things, reset passwords on, and access, accounts held by the victim, such as email and bank accounts.

**Government's Sentencing Memorandum**          **Page 5**



### 2. Mr. Junk's Earlier Criminal Activity and First Encounter with Law Enforcement

Mr. Junk first encountered law enforcement as a juvenile in the Fall of 2019. Some of Mr. Junk's co-conspirators had some sort of dispute over their share of stolen proceeds. Multiple victims received calls from a person who identified himself as "Joe" and/or "Plug Walk Joe" who provided information on Mr. Junk to the victims so the victims would contact law enforcement. According to one victim:

**Government's Sentencing Memorandum**                                      **Page 6**

Plug Walk Joe said [the VICTIM's] theft was a group effort, [the VICTIM] was targeted through a LinkedIn search, the group had insider at T-Mobile, and that someone else did the hacking because they tried to hack as many accounts as quickly as possible. Plug Walk Joe said he had received $10,000 from the person who conducted [VICTIM's] theft and wanted to shake that person down for more money.

Plug Walk Joe also "swatted"[2] Mr. Junk. This led to an investigation by the Portland Police Bureau and culminated in the execution of a search warrant at Mr. Junk's residence (which he shared with his parents). The results of that search warrant showed the attempted extortion of Mr. Junk by "Joe."



"Joe" also sent individuals to Mr. Junk's house to threaten him. Bizarrely, this led to Mr. Junk communicating with an individual using the account "realist.jadee" where Mr. Junk attempted to concoct a story for law enforcement to conceal his own activity (Mr. Junk's messages are on the right-hand side).

/ / /

/ / /

---

[2] "Swatting" is the act of illegally calling law enforcement to report a false emergency at a target location with the intent to create a tactical response by law enforcement.

**Government's Sentencing Memorandum**                                          **Page 7**



Mr. Junk was a juvenile at the time of all this activity and was not criminally charged. "Plug

Walk Joe" is Joseph O'Connor. Mr. O'Connor was charged in two different districts for his

hacking activity (none of the charges are known to specifically involve Mr. Junk) and was

sentenced to 60 months imprisonment. *United States v. O'Connor*, Case No. 21-CR-536 (S.D.N.Y.).

Mr. Junk did not learn from this experience. He continued to steal.

### 3. Mr. Junk Continues to Steal and Only Considers Retiring When Losing Stolen Money

Over the next few years, Mr. Junk continued to work with his criminal friends to steal from victims. Mr. Junk laundered his money effectively, making it difficult to find his victims. But the government has identified seven specific victims (five of whom suffered a direct loss and are discussed below in the restitution section), as well as tens of thousands of compromised personal email addresses that Mr. Junk was running through an automated bot to attempt to identify high value targets for future thefts.

As one example, shortly after turning 18, Mr. Junk stole from ADULT VICTIM 4. Mr. Junk stole approximately 10.383 Bitcoin, worth approximately $76,500, at the time of the theft. ADULT VICTIM 4 described his experience in his victim impact letter. That victim explained that it was 99% of his savings that he accumulated by saving half his money every week for years. He was so emotionally devastated, that he required help from his family to function.

In December 2021, Mr. Junk threatened more real-life violence. He told a co-conspirator that he would burn down the person's house if he did not receive $1,000 in the next five minutes. After receiving the payment, he said the person was "safe" and then told the group to extort the person because that person "folds like paper."  That person, who operated under the moniker "Aqua," was arrested in February 2021 by the National Crime Agency in the United Kingdom for having participated in hacks against major celebrities.

/ / /

**Government's Sentencing Memorandum**                                         **Page 9**



Mr. Junk tracked individuals who were charged criminally with SIM-swapping. In December 2021, Mr. Junk sent a USDOJ press release to a group titled "Special Victims Unit."



On Christmas day, the same group wished each other Merry Christmas, and Mr. Junk celebrated Plug Walk Joe's incarceration.



At times, Mr. Junk considered quitting, but he never did. Mr. Junk's occasional thoughts of "retiring" were not motivated by a new moral compass or a renewed consideration of his victims. Mr. Junk thought of quitting when he lost his stolen proceeds to other hackers. As

shown in the messages from 2022 below, he lamented losing $4 million and claimed that he was quitting.



But he did not quit. At about the same time as the previous message, he told a "holder" that "I [d]on't hack no more." Two days later, he asked the same person to "hold" a phone for another attack.



### 4.    The FBI Executes Search Warrant at Mr. Junk's Apartment and Mr. Junk Pleads Guilty

On March 3, 2022, Mr. Junk was doing what he always does, trying to steal from victims. The FBI executed a search warrant at his apartment mid-afternoon that day, right after Mr. Junk woke up. During the search, Mr. Junk's computers had browser windows open showing that he had been actively trying to steal when the FBI came to his door. For example, one tab was open to a Microsoft OneDrive file titled "Microsoft Doxed." That file, as depicted below, contained email addresses and phone numbers for potential "targets" of SIM-swapping. This is clear by the document containing the wireless carrier, critical information for someone who wants to steal a phone number.

/ / /

/ / /

/ / /



Other browser windows showed Mr. Junk logging into accounts in other people's names and accessing phone companies' websites.



The FBI seized over 71 bitcoin that day, worth approximately $3 million at the time of the seizure, along with virtually all of Mr. Junk's electronic equipment. Mr. Junk eventually surrendered more cryptocurrency to the FBI, on May 10, 2022, in the amount of approximately 33 bitcoin, which was worth over a million dollars at the time of that transfer. Additionally, Mr.

**Government's Sentencing Memorandum**                                    **Page 14**

Junk surrendered over $16,000 in varying amounts of different cryptocurrencies, including a cryptocurrency type that is most commonly used by money launderers due to its near-inability to be traced. On April 20, 2023, Mr. Junk pleaded guilty pursuant to a plea agreement.

Mr. Junk's guilty plea did not end his criminal career.

### 5.    Mr. Junk Is Kidnapped and Continues to Steal When Released (and when released from custody)

On November 11, 2023, Mr. Junk was found tied up in a field after being kidnapped the night before. He told law enforcement that a random individual targeted him because they thought he had cryptocurrency. Again, Mr. Junk did not turn away from criminal conduct. As described in the government's motion to revoke release, he continued to steal, trying to "make 6 figs [real quick] [and] chill."

On December 4, 2023, Mr. Junk had his release revoked for a week for pretrial violations involving substance abuse treatment conditions. Doc. 27. He was released to the NWRRC.

On January 9, 2024, the FBI executed a search warrant at Mr. Junk's location at the NWRRC, where the FBI seized a thumb drive that they found in his trashcan. That thumb drive contained additional information of victims, including personal identifying information and sensitive financial data. Additionally, an encrypted VeraCrypt file container was found on the thumb drive. The FBI was able to decrypt the encrypted container using a password previously used by Mr. Junk. Upon decryption, the FBI reviewed the files present within the container, identifying multiple victim target lists, including one with approximately 8,000 compromised email addresses, and another with approximately 17,000 compromised email addresses, among other files that indicated criminal activity. On some of those files, there was a "last modified" date of early January, indicating he accessed those files since arriving at the NWRRC. On

January 10, 2024, the Court revoked Mr. Junk's release based on his criminal activity while on release.

**B.      The Charges**

Defendant was charged in a one count information with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349.

**C.      The Plea Agreement & Guideline Computations**

Defendant agreed to plead guilty to the single count in the information. The parties entered into a plea agreement where the parties agreed to certain guideline enhancements. The government agreed to recommend that defendant receive a three-level reduction for acceptance of responsibility and to recommend the low-end of the guidelines.

The plea agreement is silent on USSG § 4C1.1 because that amendment became effective November 1, 2023. The parties did not have an agreement on whether that adjustment applied.

The plea agreement notes that if Mr. Junk "commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement." Doc. 12, ¶ 14.

| Enhancement | Government's Position |
|---|---|
| Base—<br>USSG § 2B1.1(a)(1) | 7 (not contested) |
| Loss—<br>USSG § 2B1.1(b)(1)(J)<br>more than $3.5 million and less than $9.5 million | 18 (not contested) |
| Number of Victims—<br>USSG § 2B1.1(b)(2)(A)(1)<br>More than 10 | 2 (not contested) |
| Sophisticated Means—<br>USSG § 2B1.1(b)(10)(C) | 2 (not contested) |
| Trafficking of Unauthorized Access Devices—<br>USSG § 2B1.1(b)(11)(B)(i) | 2 (not contested) |
| Acceptance of Responsibility—<br>USSG § 3E1.1 | -3 (pursuant to plea agreement) |

**Government's Sentencing Memorandum**                                        **Page 16**

| Zero History Offenders—USSG § 4C1.1(a)(6) | 0 (substantial financial hardship to a victim) |
|---|---|
| **Total Offense Level** | **28** |
| **Resulting Guideline Range (Criminal History I)** | **78-97** |

## Argument

### A.     Contested Guideline Issues

### 1.     Substantial Financial Hardship

Mr. Junk is not entitled to a reduction under USSG § 4C1.1 because he personally caused a substantial financial hardship to at least one victim. Determining whether a victim has suffered a substantial financial hardship is an individualized determination based on the circumstances of the particular victim. *United States v. George*, 949 F.3d 1181, 1184 (9th Cir. 2020). The provision "excludes minor or inconsequential financial harms" but what may be an inconsequential dollar amount to one victim may have serious consequences for another victim. *Id.* at 1185. The commentary to the guidelines is consistent with the Ninth Circuit's interpretation of this provision. That commentary includes a list of nonexclusive factors that include whether the victim "bec[ame] insolvent," "suffer[ed] substantial loss of retirement, education, or other savings or investment fund," or "ma[de] substantial changes to his or her living arrangements…" USSG § 2B1.1 app note 4(f).

ADULT VICTIM 4, who plans to appear and make a statement at sentencing, submitted a victim impact statement describing the hardship he suffered. He explained that he saved half his money every week to build his nest-egg of cryptocurrency. When it was stolen, he said he lost 99% of his money and was on the verge of bankruptcy several times. He had to rely on his family to help support him.

**Government's Sentencing Memorandum**                                    **Page 17**

This victim lost essentially all of his savings. Any person who loses all of their savings, especially during the uncertain times of the pandemic in November 2020, has suffered substantial financial hardship. As such, the Zero-History Offender reduction does not apply.

### 2.     Acceptance of Responsibility

The government filed a motion for a judicial finding that Mr. Junk breached his plea agreement. Doc. 36. There is out of circuit case law requiring a judicial finding of a breach. *See United States v. Cudjoe*, 534 F.3d 1349, 1355 (10th Cir. 2008) ("even if Cudjoe breached the plea agreement, until the district court so ruled, the government was not released from its promise"); *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir. 1976) ("to set aside a judicially approved plea bargain, the prosecution may not act unilaterally . . . a judge must find that there has been a substantial breach" by defendant). The Ninth Circuit has not decided this issue. *See United States v. Livar*, No. 22-30213 (argued, submitted, but still pending); *cf. United States v. Plascencia-Orozco*, 852 F.3d 910, 916 (9th Cir. 2017) (not requiring court ruling before government indicted defendant on a charge it had agreed to forego absent breach of a prior plea agreement). Absent a judicial finding of a breach, the government will recommend the three-level reduction for acceptance and recommend the low-end guideline range.

### B.     Government's Recommended Sentence

This Court should sentence Mr. Junk to 78 months because Mr. Junk has shown no ability to stop his behavior. Further, the scope of online crimes requires a sufficient sentence to deter others for engaging in the same behavior.

First, Mr. Junk carried out his criminal conduct incessantly because Mr. Junk cannot stop stealing. 18 U.S.C. § 3553(a)(2)(C)"protect the public from further crimes of the defendant." 18

U.S.C. § 3553(a)(2)(C). As outlined above, Mr. Junk has ignored every offramp from a criminal lifestyle.

The mere threat of incarceration has been an insufficient deterrent to Mr. Junk as well. After he pleaded guilty, he knew further criminal activity would put him at great risk of a harsher punishment. It did not matter. He kept stealing anyway. Mr. Junk stayed in the same criminal network even when physical violence was used against him. Mr. Junk needs to be incarcerated to ensure that, at least for some time, he will not create new victims.

Second, Mr. Junk's targeting of victims and large-scale theft is particularly reprehensible. The nature and circumstances of the offense is more than stealing from large, faceless banks, or other corporations. He targeted people. He gathered information about them, impersonated them, and stole from them. Those victims suffered immensely as they lost control of their digital lives and finances. Some woke up to their savings gone overnight. Some saw their phones flooded with thousands of messages to distract them while he stole.

As noted above, Mr. Junk also sought to commit "irl" crimes. He sent people into cell phone stores to commit SIM swaps. He sought to target people at their homes like the 90-year-old man discussed at the beginning of this memorandum. He talked about burning down other people's homes. When talking about what he would do to his kidnappers if their true identities were to be revealed, Mr. Junk stated that he would "kill their parents first[…] Then rape his mom[…] Then kill him."

/ / /

/ / /

/ / /

**Government's Sentencing Memorandum**                                        **Page 19**



This was not just idle chatter. Mr. Junk was part of the criminal group that employed those "irl" actions against him as a juvenile and as an adult. That same group was responsible for numerous acts of significant violence the past few years, such as Patrick McGovern-Allen, a 22-year-old member of the SIM swap community who was recently sentenced to 160 months in prison for using Molotov Cocktails to firebomb (and shoot at) the home of another Com member last year. *United States v. McGovern-Allen*, Case No. 2:22-cr-288-GJP (E.D. Pa.). Or in late 2022 when a teenage member of the Com was kidnapped, beaten, held at gunpoint, and forced to

make a video to extort an associate that had ripped off the orchestrator of his kidnapping. Sim

Swapper Abducted, Beaten, Held for $200k Ransom, KrebsonSecurity (Sep. 21, 2022, 12:17pm)

https://krebsonsecurity.com/2022/09/sim-swapper-abducted-beaten-held-for-200k-ransom/.

These examples are not exhaustive. Countless other acts of physical violence have occurred by

members of the Com who use their ill-gotten gains to pay thugs to beat, torture, and extort not

only other members of the Com, but innocent family members of those people as well.

     Mr. Junk is as aware as anyone about this aspect of his criminal network. He was the

target of it years ago and recently. Yet he never turned away. In December 2021, Mr. Junk talked

with another individual about harassing another person. But he did not stop at that person, he

spoke about harassing that person's girlfriend (referred to as an "egirl"). He said he wanted to

"dox his egirl," which means he wanted to publicly disclose the identity of a person to harass that

person. Mr. Junk's associated recommended SWATing this girlfriend for the next year.

Finally, as evidenced by the number of channels Mr. Junk participated in on Telegram and the number of users in those channels, Mr. Junk is certainly not alone in this criminal activity. There are young people being recruited all the time. Just as Mr. Junk tracked when other members of the Com were arrested and sentenced, other members of the Com also keep apprised of law enforcement actions. Mr. Junk and his associates have, on multiple occasions over several years, overtly addressed the fact that most people who have been arrested for SIM swap-related activity have gotten short sentences, and therefore they were not afraid to continue SIM swapping. A lengthy sentence is necessary to deter others from following the path of Mr. Junk.

### C.    Restitution & Forfeiture

#### 1.    Restitution

The Court should order restitution in the amount of the value of stolen bitcoin for each victim.

When property is stolen and that specific property cannot be returned, the Court must order restitution in a dollar amount that is the greater of either (1) the value of the property on the date of theft or (2) the value of the property on the date of sentencing.

First, in this case, the stolen bitcoin cannot be returned. When the bitcoin was stolen, Mr. Junk engaged in transactions and laundered the proceeds in ways that made return of the exact bitcoin stolen either impossible or impractical.

Second, the value of the property on the day of sentencing will, in most circumstances, be higher than on the day of the theft. The following chart sets forth victims who have had their cryptocurrency traced to Mr. Junk and have been identified as victims of his conspiracy. Some victims have only provided an estimate of amount stolen, and the FBI is continuing to try to obtain more specific information. The government intends to gather additional information and

**Government's Sentencing Memorandum**                                          **Page 22**

to provide an updated chart prior to sentencing that will also include the value of cryptocurrency on the date of sentencing.

| Date | Victim Name | Amount of Cryptocurrency Stolen | Value of 1 BTC/Value of Amount Stolen on Day of Theft (as reported on yahoo! Finance at close of the day) |
|---|---|---|---|
| 5/25/2019 | AV1 | <ul><li>2.18880321 BTC</li><li>TBD</li></ul> | <ul><li>BTC $8,052.54/$17,625.43</li><li>unknown other crypto (total value: approximately $100k-200k)</li></ul> |
| 10/6/2019 | AV2 | <ul><li>1.00161243 BTC</li><li>16.04161312 BCH</li><li>204.999625 BNB</li><li>171.3 ETH</li><li>91.24243444 LTC</li><li>9979.991 XRP</li><li>20001.499985 XLM</li></ul> | <ul><li>BTC $7,988.16/$8,001.04</li><li>BCH $223.41/$3,583.86</li><li>BNB $15.35/$2,629.46</li><li>ETH $173.06/$29,991.30</li><li>LTC $55.41/$5,055.74</li><li>XRP $0.26/$2,594.80</li><li>XLM $0.06/$1,200.09</li></ul> |
| 11/12/2019 | AV3 | <ul><li>TBD</li></ul> | <ul><li>Approximately $7,000 in crypto</li></ul> |
| 12/28/2019 | AV4 | <ul><li>10.383 BTC</li></ul> | <ul><li>$7,319.99/$76,003.46</li></ul> |
| 1/17/2020 | AV5 | <ul><li>TBD</li></ul> | <ul><li>Approximately $100,000 in crypto from Gemini account</li></ul> |

## 2.    Forfeiture

The Court has previously entered a Preliminary Order of Forfeiture and Final Order of Forfeiture. Doc. 15. By terms of that order, the forfeiture becomes final as to the defendant at sentencing. The government asks the Court to orally pronounce the forfeiture at sentencing and include it as part of the judgment.

/ / /

/ / /

/ / /

/ / /

**Government's Sentencing Memorandum**                                                                 **Page 23**

**Conclusion**

Based on the foregoing, the government recommends that this Court impose a sentence of 78 months, followed by a 3-year term of supervised release, subject to the standard conditions, plus the additional conditions as outlined in the Presentence Report.

Dated: January 24, 2024                    Respectfully submitted,

                                           NATALIE K. WIGHT
                                           United States Attorney

                                           */s/ Quinn P. Harrington*
                                           QUINN P. HARRINGTON, OSB #083544
                                           Assistant United States Attorney